## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

MISTY ASHWORTH,

                Plaintiff,

v.                                          CIVIL ACTION NO. 3:16-06646

FIVE GUYS OPERATIONS, LLC,
and DAVID DEERFIELD

                Defendants.

### MEMORANDUM OPINION & ORDER

Pending before the Court is Defendants' Five Guys Operations' and David Derifield's (collectively "Defendants") Motion to Compel Arbitration and Motion to Dismiss or, in the Alternative, to Stay This Proceeding Pending Arbitration. ECF No. 3. Plaintiff Misty Ashworth, a former employee of Five Guys in Huntington, West Virginia, brought a sexual harassment suit against Five Guys and her immediate supervisor, Derifield. Defendants assert that Ashworth executed an arbitration agreement covering claims arising from her employment with Five Guys and that the agreement committed the determination of the validity and the scope of the agreement to the arbitrator and not the courts. The Court agrees and Defendant's Motion is therefore **GRANTED**.

### I.      Background

Ashworth began working for Five Guys in Huntington, West Virginia in April 2015. As a condition of her employment Ashworth signed an employment agreement which contained an arbitration agreement. She also signed a separate document entitled "Arbitration Agreement"

which further explained the rights and duties of the parties if a dispute related to Ashworth's employment should arise.

The arbitration agreement contained in the document titled "Employment Agreement & Arbitration of Employee Rights" states in relevant part:

> Because of the delay and expense of the court system, Five Guys and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Five Guys, its related companies, and/or their current or future employees. This includes any claims concerning compensation, employment, sexual or other types of harassment or termination of employment. *In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the Federal Arbitration Act) shall apply.* (emphasis added).

The document titled "Arbitration Agreement" states in relevant part:

> Employee and Company agree that if any dispute arises from Employee's application or candidacy for employment, employment and/or cessation of employment with Company, it will be submitted to final and binding arbitration. This means that a neutral arbitrator, rather than a court or jury, will decide the dispute. Except as provided below, *the procedure for arbitration will be based on the rules for the resolution of employment disputes of the American Arbitration Association, and to the extent applicable the provisions of the Federal Arbitration Act . . . .* (emphasis added).

Ashworth filed suit against Five Guys and her former supervisor, Derifield, for constructive retaliatory discharge, sexual harassment, hostile work environment, *quid pro quo* sexual harassment, outrage, and negligent hiring, supervision, and retention. Defendants now move the Court to compel arbitration and either dismiss the case or stay it pending arbitration pursuant to section 3 and section 4 of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 3, 4.

## II.     Legal Standard

Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The FAA thereby places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Standford Junior Univ.*, 489 U.S. 468, 478 (1989)).

Section 3 of the FAA permits a party to apply to a federal court for a stay "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. And Section 4 permits a party to petition a federal court to compel arbitration "in the manner provided for" in the arbitration agreement where the opposing party failed "to arbitrate under" that agreement. § 4. The court is required to enforce the arbitration agreement "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.*

Arbitrators derive their authority to arbitrate disputes, whatever they may be, from the agreement by the parties in advance to divert certain disputes to an arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). Thus, it follows that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed to submit." *Id.* (quoting *United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

In general, disputes concerning which controversies are subject to arbitration are settled by a court. *Id.* at 649. Parties may, however, contract around this general rule and delegate the authority to determine "gateway questions of arbitrability, such as whether the parties have agreed

to arbitrate or whether their agreement covers a particular controversy" to the arbitrator by evincing a *clear and unmistakable* intent to do so. *Rent-A-Center*, 561 U.S. at 68–69 (emphasis added); *AT&T*, 475 U.S. at 649. Agreements of this kind are treated no differently than any other agreement to arbitrate. *Rent-A-Center*, 561 U.S. at 70. They are "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* In other words, unless a party challenging a clear and unmistakable agreement to arbitrate gateway issues can demonstrate "grounds as exist at law or in equity for the revocation of any contract," the Court must enforce it pursuant to sections 3 and 4 of the FAA. § 2; *see also id.*; §§ 3, 4.

Broad, general, and vague agreements will not meet the clear and unmistakable standard imposed on agreements to commit the determination of gateway issues to the arbitrator. *See AT&T*, 475 U.S. at 645 (holding that the clause committing all "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder" did not permit the arbitrator to determine arbitrability issues); *Trans World Airlines*, 127 F.3d 337, 338 (4th Cir. 1997) (finding the clause committing all "disputes between the Union, employee, and the Company growing out of the interpretation or application of any of the terms of this agreement" to arbitration did not permit the arbitrator to determine the scope and meaning of the agreement). "If contracting parties wish to let an arbitrator determine the scope of his own jurisdiction, they must indicate that intent in a clear and specific manner." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999). Incorporation by reference of an arbitration body's rules for arbitration that include a rule that the arbitrator will determine gateway arbitrability issues is considered a clear and unmistakable intent by the parties to commit determinations of the arbitrator's jurisdiction to the arbitrator. *See, e.g.*, *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009).

-4-

### III.    Discussion

Defendants seek to stay or dismiss the case and compel arbitration pursuant to the FAA and in accord with the two arbitration agreements executed by Ashworth. Defendants maintain that the incorporation by reference of the American Arbitration Association's ("AAA") rules, which consequently state that an arbitrator, not a court, will determine issues of arbitrability, is enforceable and should preclude the Court from determining gateway issues of arbitrability. Ashworth opposes the imposition of arbitration on a number of grounds. In light of *Rent-A-Center*, however, the Court need only address Ashworth's arguments attacking the sufficiency and validity of the clauses in the agreements committing controversies about arbitrability to the arbitrator. *See Rent-A-Center*, 561 U.S. at 72 ("unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2 . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator.")

A.  *Clear and Unmistakable Delegation*

None of Ashworth's arguments on this matter are availing. Ashworth first attempts to contend that the delegation clauses of the two arbitration agreements committing the determination of arbitrability to an arbitrator are not "clear and unmistakable." The Court cannot agree.

The majority of circuits that have addressed this specific issue have found that a delegation clause that incorporates by reference arbitration rules that contain a provision that provides that the arbitrator will determine issues of arbitrability is a "clear and unmistakable" expression of the parties' intent to have an arbitrator determine arbitrability. *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 675 (5ht Cir. 2012); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F.App'x 630, 632 (9th Cir. 2011); *Fallo*, 559 F.3d at 878; *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed.Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP,*

432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg,* 886 F.2d 469, 472–73 (1st Cir. 1989). Although the Fourth Circuit has not had an occasion to rule on this specific issue, a number of district courts in this circuit have adopted this holding. *Milbourne v. JRK Residential Am., LLC*, No. 3:12-cv-861, 2016 WL 1071564, at *4 (E.D. Va. Mar. 15, 2016); *Green v. Rent-A-Center East, Inc.*, No. 0:15-cv-3245, 2015 WL 8907452, at *4 (D.S.C. Nov. 24, 2015); *Innospec Ltd. V. Ethyl Corp.*, No. 3:14-cv-158, 2014 WL 5460413, at *4 (E.D. Va. Oct. 27, 2014); *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11-cv-371, 2013 WL 1332028, at *5 (E.D. Va. Mar. 29, 2013).

The Court must admit that it finds these holdings to be incongruous with case law mandating delegation clauses be clear and unmistakable. Incorporation by reference of an obscure body of rules to show a clear and unmistakable intent to adhere to one rule specifically is preposterous. It is so unlikely as to be bordering on the absurd that an unsophisticated party, such as an employee of a fast food restaurant, would know what the AAA is, much less the contents of its governing rules. The intent of the agreement is undoubtedly clear and unmistakable to the authors, most likely employers, but the intent is obfuscated, possibly intentionally, for the employee unless the employee happens to know the AAA rules, a ridiculous assumption, or takes the time to read the rules and specifically notices, among all the other rules, the rule permitting the arbitrator to determine gateway issues. How this could be considered clear and unmistakable can only be explained if the true meanings of "clear" and "unmistakable" are ignored.

Nevertheless, the Court is unwilling to make such a determination in light of the unanimity of opinion among federal courts. Consequently, the Court finds that the incorporation by reference of the AAA rules which contain a provision committing the determination of arbitrability to the arbitrator to be a clear and unmistakable expression of the parties' intent to leave gateway issues

to the arbitrator and not the court.

B.  *Unconscionability of the Delegation Clause*

Next, Ashworth argues that the delegation clauses are invalid because they do not explain that she has a Seventh Amendment right to a jury trial, she may consult with an attorney, and she knowingly, intelligently, and voluntarily waives those rights and accepts that an arbitrator will decide arbitrability issues. Ashworth's arguments are best described as an assertion that the delegation clauses are unconscionable.[1]

Where a delegation clause is clear and unmistakable, as the ones here are, a party seeking its nullification must be able to present "grounds as exist at law or in equity for the revocation of any contract." § 2; *Rent-A-Center*, 561 U.S. at 70.

As an initial matter, Ashworth does not cite, nor is the Court aware of, any case law that requires the inclusion of the information Ashworth contends must be present in order for the delegation clause to be valid. Indeed, such a holding would be incoherent. A delegation clause is only one clause among many other clauses of the larger arbitration agreement. If the delegation clause contained all the information Ashworth maintains that it must to be valid, it would nearly become an entire arbitration agreement unto itself contained within the larger arbitration agreement. Arbitration agreements are not matryoshka dolls.

---

[1]  This argument is contained in a section of Ashworth's Response titled "The Court Should Hear this Matter Because Ms. Ashworth Did Not Agree to Have an Arbitrator Decide Jurisdiction." Pl.'s Resp. in Op. to Defs.' Mot. To Compel Arbitration 4. The Court understands this heading to mean that the argument to follow will challenge the delegation clause specifically. Yet, the single paragraph devoted to this argument begins "The 'Arbitration Agreement' does not explain . . . ." *Id.* at 5. It appears that this argument is directed at the arbitration agreement as a whole. Nonetheless, the Court will treat the argument as an attempted challenge to the delegation clause specifically as required by *Rent-A-Center*. 561 U.S. at 72.

A delegation clause has the same effect as a clause defining the controversies that are subject to arbitration. It simply adds another controversy to the scope of the arbitrator's jurisdiction. A clause in the arbitration agreement defining which disputes will be committed to the arbitrator similarly need not explain every right granted or forsworn as a result of that specific clause. Other clauses in the agreement can be committed to explaining the effect of the agreement. It is absurd to contend that each clause must contain within itself its own explanation of its effect. Undoubtedly entire arbitration agreements may be found unconscionable upon the exclusion of some information, *see, e.g.*, *Dalton v. J. Mann Inc.*, No. 16-cv-03409, 2016 WL 5909710, at *4–5 (N.D. Cal. Oct. 11, 2016), but where an agreement contains a valid delegation clause the Court may not wade into that dispute—it must be left for the arbitrator. *See Rent-A-Center*, 561 U.S. at 72. To avoid this result a party must successfully challenge that specific clause which delegates jurisdictional authority to the arbitrator by raising defenses tailored to defeat it rather than the entire agreement.[2] *Id.*

   Ashworth's arguments aimed at showing the delegation clauses are unconscionable are not conceptually applicable to that clause. They are instead more appropriately aimed at the agreement as a whole. Due to this feature, and because the agreement contains a valid delegation clause, the Court may not address the validity or the scope of the agreement.

   The remainder of Ashworth's arguments are directed at the validity of the arbitration agreement. Those arguments are not proper before this Court. They must be brought before the arbitrator.

---

   [2] The delegation clause is susceptible to challenge based on common law contract defenses, such as incapacity, ambiguity, coercion, fraud, or misrepresentation, but Ashworth failed to bring such challenges. *See Schumacher Homes of Circleville, Inc. v. Spencer*, 787 S.E.2d 650, 662–63 (W. Va. 2016) (listing contract defenses).

C.  *Grounds for Dismissing the Case*

Defendant's Motion asks the Court to dismiss or alternatively stay the case pending arbitration. ECF No. 3. The FAA mandates district courts to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Although the § 3 mandate requires a stay, federal circuit courts are divided as to whether a district court retains the discretion to dismiss an action when all claims are referred to arbitration. *See Reed v. Darden Rests., Inc.*, No. 3:16-cv-3872, 2016 WL 5796900, at *5 (S.D.W. Va. Oct. 3, 2016) (comparing cases). In the Fourth Circuit, the court has differentiated procedural outcomes based on whether all claims within a case are sent to arbitration. *Compare Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (mandating a stay) *with Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). In *Aggarao v. MOL Ship Management Company*, the Court recognized the tension between these two decisions but deferred resolving the issue. 675 F.3d 355, 376 n. 18 (4th Cir. 2012).

Here, Plaintiffs' claims relate directly to her employment with Five Guys. *See* Pls.' Compl., ECF No. 1-2. All of these claims fall within the plain meaning of the arbitration agreement between the two parties. Following the guidance of this circuit in *Choice Hotels*, dismissal pending arbitration is appropriate when all issues are subject to arbitration.

## IV.   Conclusion

The Court **GRANTS** Defendants' Motion to Compel Arbitration and Motion to Dismiss or, in the Alternative, to Stay This Proceeding Pending Arbitration. ECF No. 3. The case shall be **DISMISSED** without prejudice, pending arbitration.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        December 22, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE